GIBSON DUNN

Andrew Kilberg
akilberg@gibsondunn.com

October 20, 2026

VIA ECF

The Honorable Naomi Reice Buchwald
United States District Judge
500 Pearl St.
New York, NY 10007-1312

Re: *Credit Suisse Securities (USA) LLC, et al. v. Mitchell*, No. 26-cv-06729-NRB

Dear Judge Buchwald:

We submit this letter outlining the substantive arguments in Petitioners' Memorandum of Law in Support of Petition to Vacate Arbitral Award in Part and Confirm Award in Part ("Memorandum") dated September 10, 2026, pursuant to Section 2(C)(1) of Your Honor's Individual Practices. We apologize for the inadvertent omission of this letter at the time we submitted the Memorandum.

Petitioners seek vacatur of the portion of an arbitral award that puts Petitioners to a Hobson's choice: violate the award or violate a binding edict of the Swiss government. The Award "compels the violation of law" and should be vacated under Section 10(a)(4) of the Federal Arbitration Act ("FAA") because it is contrary to U.S. public policy and reflects manifest disregard of the law. *Perma-Line Corp. of Am. v. Sign Pictorial Union, Local 230*, 639 F.2d 890, 895 (2d Cir. 1981) (citation omitted); *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388-89 (2d Cir. 2003). The arbitrator also ordered Respondent to fulfill an obligation, under his separation agreement, to partially repay a retention award that he forfeited by voluntarily departing the bank. Respondent has no defense for non-payment. The Court thus should confirm the Award with respect to Petitioners' counterclaim.

**Background.** In March 2023, Credit Suisse was on the verge of collapse when Swiss authorities took swift and extraordinary action, providing hundreds of billions of Swiss francs in financial support and orchestrating the once-unthinkable merger of Credit Suisse with its longtime rival, UBS. An essential component of that rescue package was a required write-down of Credit Suisse's Additional Tier 1 instruments ("AT1s") and Contingent Capital Awards ("CCAs").

AT1s are publicly traded bonds issued by banks that act as shock absorbers in the event of a crisis. The law *requires* that AT1s be written down and cancelled when a bank is threatened with insolvency. *See, e.g.*, ECF No. 22-10, FINMA Report at 39-40. CCAs were a form of compensation Credit Suisse provided to its executives that were "model[ed] on" AT1s and "structured to mirror" those instruments. ECF No. 5-1, Award ¶¶ 10-11. Accordingly, the CCAs were required to be written down on the occurrence of a "Viability Event." *See* ECF No. 5-5, CCA Certificate § 3.

Swiss authorities devised a rescue plan for the bank that included a merger with UBS and a write-down of the AT1s and CCAs. Award ¶¶ 91-107. On March 19, 2023, FINMA issued a "Decree"

instructing Credit Suisse to write down the AT1s. FINMA explained that a Viability Event had occurred under the terms of the AT1 and CCA contracts. ECF No. 22-15, March 19 Decree ¶¶ 16-22. The agency thus determined "a complete write-off and cancellation of the AT1 instruments"—including the CCAs—was "appropriate to ensure the continued existence" of Credit Suisse's "functions." *Id.* ¶ 23. Citing its statutory authority to act in such crisis situations, FINMA "decree[d]" that "Credit Suisse Group AG is instructed to write off all AT1 instruments and to notify the creditors concerned without delay." *Id.* at 5 (decretal ¶ 1); *see also id.* ¶¶ 13-14, 24-25. Credit Suisse subsequently asked FINMA to reconsider whether the March 19 Decree covered the CCAs, a request FINMA "rejected in its entirety" in a second Decree. ECF No. 22-16, March 22 Decree ¶ 16. The CCAs, FINMA said, were "included in the write-off of all AT1 instruments." *Id.*

Respondent Matthew Mitchell was awarded CCAs from 2020 to 2022 for his work as a Managing Director at Petitioner Credit Suisse Securities (USA) LLC. Award ¶¶ 74-78. In August 2022, Mitchell received an additional type of compensation known as an Upfront Cash Award, or "UCA," designed to discourage voluntary attrition. *Id.* ¶ 82; ECF No. 5-11, Witness Statement of Colleen Henry ¶¶ 5-6. Yet Mitchell left the bank soon after receiving the UCA and executed a Separation Agreement which allowed him to "keep a substantial amount of his compensation that he otherwise would have forfeited due to voluntary resignation," including his CCAs. Award ¶ 82. In exchange, the Separation Agreement required him to repay a portion of his UCA. *Id.* ¶¶ 82-83; *see* ECF No. 5-8, Separation Agreement § 3(c). Mitchell subsequently refused to repay.

In the ensuing arbitration, Petitioners argued that the CCAs were properly written down because both types of Viability Event occurred in March 2023. Petitioners further argued that even if a Viability Event had not occurred, their performance was excused under New York contract law because paying the CCAs "would require them to violate Swiss government decrees." Award ¶¶ 171-72. In the arbitral award issued on May 8, 2026, and under review here, the arbitrator nevertheless ordered Petitioners to "pay" Mitchell's written-down CCAs. *Id.* ¶ 219(a).

**The Award Must Be Vacated With Respect To Mitchell's Claim.** Section 10 of the FAA authorizes district courts to vacate arbitral awards "where the arbitrators exceeded their powers." *See* 9 U.S.C. § 10(a)(4). As the Second Circuit has long recognized, that includes an award that is "contrary to a well accepted and deep rooted public policy," such as an award that "compels the violation of law." *Perma-Line*, 639 F.2d at 895 (citation omitted); *see Duferco*, 333 F.3d at 389. It also includes awards that reflect "manifest disregard of the law," such as awards that command a party to violate the law. *Duferco*, 333 F.3d at 388-89; *N.Y. Tel. Co. v. CWA Local 1100*, 256 F.3d 89, 90-92 (2d Cir. 2001). As a result, it is "incumbent" on courts to "step in" when an award directs a party to violate the law. *Perma-Line*, 639 F.2d at 895.

Importantly, the question of whether an award violates public policy or otherwise exceeds arbitral powers is "for resolution by the courts"—not arbitrators. *W.R. Grace & Co. v. Local 759, Int'l Union of United Rubber Workers*, 461 U.S. 757, 766 (1983). That includes whether the arbitrator has correctly interpreted the law that the award would allegedly compel a party to violate. *N.Y. Tel. Co.*, 256 F.3d at 90-92; *Perma-Line*, 639 F.2d at 894-96.

FINMA's Decrees forbid Petitioners from paying the CCAs. FINMA "*instruct[ed]*" that the AT1s be "*fully written off and cancelled*" and "*instructed*" Credit Suisse "to immediately initiate *the complete write-off of the AT1 instruments*." March 19 Decree ¶¶ 24-25 (emphasis added). The Order's concluding, decretal language reiterated this command. *Id.* at 5 (decretal ¶ 1). While purporting to "offer[] no opinion on Swiss law," Award ¶ 168, the arbitrator insisted on interpreting FINMA's Decrees merely to "require[] exhaustion of contractual options, not a write-down," *id.* ¶ 144. That understanding has been contradicted by Swiss authorities and even Mitchell's counsel. It also is at odds with the conclusion of the Second Circuit, which recognized that FINMA "ordered Credit Suisse to write their [AT1s] down to zero." *Creditincome Ltd. v. Swiss Confederation*, 182 F.4th 213, 215 (2d Cir. 2026). Several other courts agree. *See, e.g.*, *Palomino Master Ltd. v. Credit Suisse Grp. AG*, 2026 WL 848394, at *3 (S.D.N.Y. Mar. 26, 2026).

FINMA's Decrees also bear the force of law. The arbitrator did not seriously question that FINMA's Orders were binding commands from the Swiss government. Nor did he suggest that the Orders were unlawful. Instead, he accepted that FINMA's Decrees carry the force of law and acknowledged that they "clearly" provided Petitioners with a "good faith basis" to conclude that failing to pay the CCAs "'was in compliance with the law.'" Award ¶ 187 (citation omitted). But the arbitrator still casually suggested that it was "not clear" whether FINMA could impose serious "sanctions" on Petitioners for violating its Decrees. *Id.* ¶ 175. The severity of the punishment is immaterial—what matters is that the Award requires Petitioners to *break the law*. *See, e.g., N.Y. Tel. Co.*, 256 F.3d at 90-92; *Perma-Line*, 639 F.2d at 895.

The Award against Petitioners thus "compels the violation of law" and accordingly transgresses U.S. "public policy." *Perma-Line*, 639 F.2d at 895 (citation omitted). The Award also is in "manifest disregard of the law" because the conflict between FINMA's Decrees and the Award is "so obvious that it would be instantly perceived as such by the average person qualified to serve as an arbitrator." *Duferco*, 333 F.3d at 390. Because the Award is both contrary to public policy and in manifest disregard of the law, this Court is obligated under Section 10(a)(4) of the FAA to "step in" and vacate it. *Perma-Line*, 639 F.2d at 895.

**The Award Should Be Confirmed With Respect To Petitioners' Counterclaim.** Section 207 of the FAA allows parties to apply for the confirmation of international arbitral awards. In that posture, the court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award" under the New York Convention, a treaty governing the confirmation of international arbitral awards. 9 U.S.C. § 207. No such ground exists here.

Respectfully submitted,

*/s/ Andrew G. I. Kilberg*

Andrew G.I. Kilberg
Gibson, Dunn & Crutcher LLP
Counsel for Petitioners